IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROBBIE EMERY BURKE, as Special Administrator of the ESTATE OF DOMINIC F. ROLLICE, Deceased,<br><br>   Plaintiff,<br><br>vs.<br><br>(1) CITY OF TAHLEQUAH, OKLAHOMA,<br>(2) BRANDON VICK, and<br>(3) JOSH GIRDNER,<br><br>   Defendants. | Case No.: 18-CV-257-RAW<br><br>ATTORNEY LIEN CLAIMED<br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Robbie Emery Burke ("Plaintiff"), as Special Administrator of the Estate of Dominic F. Rollice, Deceased, ("Mr. Rollice" or "Decedent") and, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, for her Second Amended Complaint against Defendants alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Robbie Emery Burke, Special Administrator of the Estate of Dominic F. Rollice, is a resident of Tulsa County, Oklahoma.

2. Defendant City of Tahlequah, Oklahoma is a municipality located in Cherokee County, Oklahoma. The City provides and employs the Tahlequah Police Department ("TPD").

3. Defendant Brandon Vick ("Lieutenant Vick" or "Defendant Vick") was at all times relevant hereto, a police officer employed by the TPD. At all pertinent times, Defendant Vick was acting within the scope of his employment and under color of State law. Based upon information

and belief, Defendant Vick was a resident of Cherokee County, Oklahoma at the time of the incidents described herein.

4.      Defendant Josh Girdner ("Officer Girdner" or "Defendant Girdner") was at all times relevant hereto, a police officer employed by the TPD. At all pertinent times, Defendant Girdner was acting within the scope of his employment and under color of State law.  Also based upon information and belief, Defendant Girdner was a resident of Cherokee County, Oklahoma at the time of the incident described herein.

5.      The acts giving rise to this lawsuit occurred in Cherokee County, State of Oklahoma.

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

7.      The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and/or Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

9.      Paragraphs 1 through 8 are incorporated herein by reference.

10.     On or about August 12, 2016, officers with the Tahlequah Police Department ("TPD"), Lieutenant Vick, Officer Girdner and Officer Chase Reed ("Officer Reed),  responded

to a call about a disturbance at a residence in the 400 block of Shawnee Court in Tahlequah, Oklahoma.

11. Lieutenant Vick, Officer Girdner and Officer Reed arrived at the scene and encountered Mr. Rollice in his garage.

12. As Lieutenant Vick, Officer Girdner and Officer Reed began questioning Mr. Rollice, he calmly walked to the back of his garage.

13. Lieutenant Vick, Officer Girdner and Officer Reed entered Mr. Rollice's garage and aggressively moved toward him as he walked further into his garage.

14. Once Mr. Rollice had been driven to the back of his garage, he picked up a hammer that was hanging on the back wall.

15. As Mr. Rollice picked up the hammer, Lieutenant Vick and Officer Girdner took a few steps backwards, raised their firearms and pointed them at Mr. Rollice.

16. Lieutenant Vick, Officer Girdner and Officer Reed aggressively yelled at Mr. Rollice to drop the hammer as he stepped backwards, reaching the back of his garage.

17. Mr. Rollice asked the officers to leave and stated that he had done nothing wrong. Mr. Rollice held his empty left hand out at the officers, urging them to stay back.

18. The officers continued to scream at Mr. Rollice for approximately 20 seconds as he continued to stand in the back of his garage, never approaching or threatening the officers.

19. Officer Reed then drew his Taser and pointed it at Mr. Rollice, while Lieutenant Vick and Officer Girdner kept their guns pointed at him. Mr. Rollice stated that he saw the Taser, and repeated that he had done nothing wrong.

20. Suddenly, Lieutenant Vick and Officer Girdner, completely unprovoked, began firing their weapons at Mr. Rollice, firing six shots, and striking him with bullets four times in the chest and left hand.

21. At the time that Lieutenant Vick and Officer Girdner began shooting Mr. Rollice, he did not pose an immediate threat of serious harm to himself, the officers, or anyone else.

22. After being shot, Mr. Rollice immediately slumped into a crouching position, obviously gravely injured.

23. Lieutenant Vick and Officer Girdner continued to scream at Mr. Rollice to get on the ground, and after approximately two seconds, he fell backwards onto the floor of the garage.

24. Lieutenant Vick and Officer Girdner then approached Mr. Rollice with their weapons still drawn. One officer grabbed Mr. Rollice and pulled him a couple of feet toward the middle of the garage. The officer then pulled Mr. Rollice's hands behind his back and handcuffed him.

25. As Mr. Rollice laid on the ground, moaning in extreme pain and struggling to breathe, the officers asked each other if they were ok, declining to check on Mr. Rollice's well-being.

26. Approximately two minutes passed without Lieutenant Vick or Officer Girdner checking on Mr. Rollice. Officer Reed then crouched next to Mr. Rollice for a few minutes while waiting for an ambulance.

27. Approximately nine minutes later, an ambulance arrived and paramedics evaluated Mr. Rollice, who had stopped breathing. The paramedic detected an extremely faint pulse.

28. Paramedics then transported Mr. Rollice to Northeastern Health Systems in Tahlequah, Oklahoma, where he was pronounced dead.

29. Lieutenant Vick and Officer Girdner's use of deadly force on Mr. Rollice and continuing to point their weapons at him after he had been shot multiple times constitutes excessive and objectively unreasonable force in violation of Mr. Rollice's clearly established constitutional rights.

30. Indeed, no use of force was necessary against Mr. Rollice. He stood in the same spot in the back of his garage and never attempted to move toward the officers or threaten them in any way.

31. Due to the excessive use of force, Mr. Rollice suffered gunshot wounds to his chest and left hand, unnecessary pain and mental anguish and death.

32. There are unabated and long-standing practices, policies and/or customs of excessive force, failure to adequately train and failure to adequately supervise within the Tahlequah Police Department. *See, e.g., Blum v. City of Tahlequah,* et al., Case No. 15-CV-157 (E.D. Okla.); *Ibarra v. City of Tahlequah,* Case No. 12-CV-0098 (E.D.Okla)., *Crittenden v. City of Tahlequah et al.,* Case No. 17-CV-106 (E.D. Okla.) (grant of summary judgment on appeal).

33. The City of Tahlequah has been on notice of multiple constitutional violations committed by its officers and has failed to address or correct them. In *Ibarra v. City of Tahlequah*, credible allegations and evidence of excessive force by Tahlequah Police Department ("TPD") officers came to light. It is clear, at the very least, that Officer Skylar Green witnessed and was complicit in excessive force on the plaintiff in *Ibarra*, as well as his girlfriend. The evidence in *Ibarra* tended to prove that Officer Green engaged in an illegal search and misappropriation of funds. There was evidence in *Ibarra* as to a lack of remedial training concerning appropriate behavior during traffic stops. There was also evidence in *Ibarra* of a failure of TPD officers to *Mirandize* the plaintiff in that case. In deliberate indifference to the harm likely to result, the City

took either no remedial action, or inadequate remedial action, in response to the deficiencies identified in *Ibarra.*

34. In 2015, three years after *Ibarra* was filed, more allegations and evidence of excessive force by TPD officers came to light. In *Blum v. City of Tahlequah*, a group of TPD officers, including Officer Pamela Bell, pulled over a 17-year-old who was driving around Tahlequah. Officer Bell admitted that she had no valid reason to stop the vehicle the plaintiff was driving. After she illegally stopped the vehicle, she detained the plaintiff and the other passengers for an extended period of time. After about ten minutes, Officer Green and another TPD officer arrived at the scene. The officers finally told plaintiff that he could call his parents, but when he got out his cell phone, the officers ordered him out of his vehicle. When the plaintiff complied, Officer Bell suddenly grabbed his cell phone out of his hand. Then, Officer Green, without any provocation whatsoever, grabbed the plaintiff by the neck and slammed him down onto the pavement with significant force, breaking his collar bone. This was another clear case of excessive force, but the officers were not disciplined by the City.

35. In 2017, Officers Bell, Bronson McNeil, Randy Tanner, and Reed Felts responded to a call about two males fighting near Fox and Mission Streets in Tahlequah. The officers arrived at the scene and began questioning anyone who came out of the nearby homes regarding a truck in the yard that was allegedly stolen. When a male exited and then reentered the homes where the truck was parked, the officers began yelling at the man to come out. Officer McNeil drew his gun and Officer Bell circled the house where she claimed she noticed someone trying to exit through the window. The officers then saw Joshua Crittenden trying to kick out an attic vent in order to exit the house. Officer McNeil came outside and yelled "he's got a gun." Crittenden asked the officer to let him out but Officer Bell yelled back, "you're not coming out." There is evidence that

Crittenden was unarmed and not posing and immediate threat when Officer Tanner shot him dead. While summary judgment was granted to Defendants in the Crittenden matter, it is currently on appeal.

36. Despite being on notice of several constitutional violations committed by TPD officers, the City has made no or inadequate remedial measures. These municipal practices, policies and/or customs, evincing a fundamental failure to train and supervise, were a moving force behind Mr. Rollice's pain, suffering, Constitutional injuries and death.

37. Thus, the City is liable under a municipal liability theory.

### CAUSES OF ACTION

### CLAIM I
### EXCESSIVE USE OF FORCE
### (Fourth Amendment; 42 U.S.C. § 1983)
### (Defendants Vick, Girdner, Reed and the City of Tahlequah)

38. Paragraphs 1 through 37 are incorporated herein by reference.

39. At the time of the complained events, Mr. Rollice had a clearly established constitutional right under the Fourth Amendment to be secure in his person and free from objectively unreasonable excessive force to injure him and his bodily integrity.

40. Any reasonable officer knew or should have known those rights at the time of the complained of conduct as they were clearly established.

41. At the time the deadly force was used by Lieutenant Vick and Officer Girdner, they did not have probable cause to believe that Rollice posed a threat of serious physical harm to himself or others and that deadly force was unnecessary to restrain Mr. Rollice or secure the safety of officers, the public, or Mr. Rollice himself.

42. Lieutenant Vick and Officer Girdner fired at Mr. Rollice several times in quick succession, hitting him at least four times and causing his injury and death.

43. Lieutenant Vick and Officer Girdner applied objectively unreasonable and excessive physical force on Mr. Rollice, thereby causing him serious bodily injuries, as well as mental pain and anguish, that ultimately resulted in his death.

44. In addition, it was objectively unreasonable and excessive for Lieutenant Vick and Officer Girdner to continue to point a gun at Mr. Rollice after he had been shot and was lying helpless on the ground, causing Mr. Rollice additional mental pain and anguish.

45. As a direct and proximate result of Lieutenant Vick and Officer Girdner's unlawful conduct, Mr. Rollice suffered actual physical injuries, mental and physical pain and suffering, death, and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

46. The City is liable for its own policies and customs that were a moving force behind Mr. Rollice's Constitutional injuries. *See* Paragraphs 32-37, *supra*.

## PUNITIVE DAMAGES

47. Paragraphs 1 through 46 are incorporated herein by reference.

48. Plaintiff is entitled to punitive damages on his claims against Defendants Vick and Girdner, as their conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Mr. Rollice's rights.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant her the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

DATED this 23rd day of October 2018.

                                Respectfully submitted,

                                /s/Robert M. Blakemore
                                Robert M. Blakemore, OBA #18656
                                Daniel E. Smolen, OBA #19943
                                Smolen, Smolen & Roytman, PLLC
                                701 S. Cincinnati Ave.
                                Tulsa, Oklahoma 74119
                                P: (918) 585-2667
                                F: (918) 585-2669

                                **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 23rd day of October 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

                                s/ Robert M. Blakemore