# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBBIE EMERY BURKE, as Special Administrator of the ESTATE OF DOMINIC F. ROLLICE, Deceased.** )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**CITY OF TAHLEQUAH, OKLAHOMA, BRANDON VICK, and JOSH GIRDNER,** )<br>)<br>)<br>)<br>Defendants. ) | Case No. CIV-18-257-RAW |

## ORDER

Before the court is the motion of the defendants Brandon Vick and Josh Girdner for summary judgment. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Sidlo v. Millercoors, LLC,* 718 Fed.Appx. 718, 725 (10th Cir.2018). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Doe v. City of Albuquerque,* 667 F.3d 1111, 1122 (10th Cir.2012).

On August 12, 2016, defendants Vick and Girdner (officers with the Tahlequah Police Department) shot and killed Dominic Rollice in Rollice's garage. Plaintiff brings a single

claim pursuant to 42 U.S.C. §1983 for excessive force against all defendants.[1] Section 1983 does not create substantive rights but provides a vehicle for their enforcement. *See Brown v. Buhman,* 822 F.3d 1151, 1161 n.9 (10th Cir.2016). When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. *Johnson v. City of Roswell,* 752 Fed.Appx. 646, 650 (10th Cir.2018).

To succeed under section 1983 on an excessive force theory, the plaintiff must show the officers used greater force than would have been reasonably necessary to effect a lawful arrest. *Lynch v. Bd. of County Commissioners of Muskogee County,* 2019 WL 423382, *3 (10th Cir.2019). This is an objective inquiry and courts consider the totality of the circumstances when making it. *Id.*

Here, the individual officers seek summary judgment based on qualified immunity. Public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties. *McCoy v. Meyers,* 887 F.3d 1034, 1044 (10th Cir.2018). They are entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights. *Id.*

In the face of a qualified immunity defense, the plaintiff must carry a heavy burden to show that: (1) defendant's actions violated a constitutional right, and, if so, (2) the right

---

[1] At one point Officer Chase Reed was named as a defendant, but he is not a named defendant in the second amended complaint. His name does appear in a caption. (#28 at 7).

was clearly established at the time of defendant's unlawful conduct. *Crittenden v. City of Tahlequah,* 2019 WL 4238106, *4 (10th Cir.2019).[2] Despite this burden-shifting, the court still views the facts in the light most favorable to the nonmoving party and resolves all factual disputes and reasonable inferences in its favor. *Estate v. Booker v. Gomez,* 745 F.3d 405, 411 (10th Cir.2014).[3]

Much of the conduct is largely undisputed, as the incident was captured on police "body cam" video (#47-8 & #56-7), which the court has reviewed. The application of the facts to applicable legal principles is, however, very much contested. On August 12, 2016, Rollice's ex-wife called 911 to complain that her ex-husband was in the garage and was drunk. Girdner was the lead officer and Reed was his backing officer, although both arrived separately. Vick also arrived separately. Girdner encountered Rollice in the entry of the garage. Based on Rollice's "fidgety" conduct, Girdner asked him if Girdner could pat him down for weapons.

Rollice backed up and then turned and walked away from Girdner to the back of the garage. All three officers followed Rollice into the garage. The video is silent, but the

---

[2]Defendants "notif[ied]" this court of the *Crittenden* decision by supplement (#67) to their motions. This was unnecessary, inasmuch as the decision is an appeal from the undersigned. The defendants argue that the facts in *Crittenden* are "comparable" (#67 at 2) to the case at bar, but this court finds this to be accurate only at a high level of generality. For example, the suspect in *Crittenden* was believed to have a firearm and was hiding from the police. In short, *Crittenden* is distinguishable.

[3]If the plaintiff satisfies this two-part test, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Pauly v. White,* 874 F.3d 1197, 1214 (10th Cir.2017).

3

officers aver that Girdner ordered Rollice to stop but Rollice ignored the command. At the back of the garage, Rollice reached up and grabbed a hammer hanging on the wall over the work bench. At this point, the video is no longer silent and the officers can be heard yelling at Rollice to drop the hammer.[4] Rollice initially grasped the hammer with both hands, but then shifted to his right hand and held the hammer aloft. The officers drew their firearms. At one point, Reed holstered his gun and drew his Taser.

Rollice moved to his right and had an unobstructed path to Girdner. Girdner estimates that there were about 8 to 10 feet between himself and Rollice after Rollice moved to his right. (#47-3 at ¶13). Ultimately, Rollice raised the hammer still higher as if he might be preparing to throw it, or alternatively, charge the officers. At that moment, Girdner and Vick fired their weapons.[5] Rollice went down in a kneeling position, but still held the hammer. Reed fired his Taser but missed. While kneeling, Rollice raised the hammer again and Girdner fired again.[6] Rollice dropped the hammer and fell backwards onto the floor of the

---

[4] In their affidavits, all three officers assert that, upon grabbing the hammer, Rollice said "One of us is going to fucking die tonight." (#47-3 at ¶10);(#47-5 at ¶13);(#47-6 at ¶8). This statement is not audible on the video, and plaintiff argues that it should not be considered for summary judgment purposes. The Tenth Circuit has not spoken, but "[e]very circuit to have confronted this situation" (i.e., the witness most likely to contradict the officer's story is dead) has directed particular care in evaluation. *Flythe v. District of Columbia,* 791 F.3d 13, 19 (D.C.Cir.2015). This court finds the alleged statement is not essential to the present analysis and does not rely on it.

[5] Plaintiff asserts that Girdner and Vick fired six shots, striking Rollice four times. (#56 at 2).

[6] It is impossible to ascertain from the video who fired at Rollice while he was in the kneeling position, but it appears to be undisputed that it was Girdner. (*See* #47-3 at ¶16). Vick refers to "another gunshot" (#47-6 at ¶16), while Reed says he "heard several

4

garage.

The court now addresses the two prongs of the qualified immunity test. First, was there a violation of a constitutional right? "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The proper application of the Fourth Amendment's reasonableness test requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

The first and third factors are somewhat difficult to apply, because it is undisputed that the officers approached without the intent to arrest Rollice. (#47-5 at ¶9). In *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052, 1057-1058 (9th Cir.2003), the court said there was a "less-than-overwhelming" government interest where there was no underlying crime at issue – a neighbor called police because the plaintiff was acting in an emotionally disturbed manner. In the case at bar, the situation evolved from a non-arrest to a use of deadly force. "[W]ithout a seizure, there can be no claim for excessive use of force." *Jones v. Norton,* 809 F.3d 564, 575 (10th Cir.2015). Here, the "seizure" required for Fourth

---

more gunshots." (#47-5 at ¶22). To the court's ear, it sounds like a single gunshot.

5

Amendment applicability may have taken place when Girdner asked to pat down Rollice for weapons, or it may not have taken place until the actual shooting. *See Pauly v. White,* 874 F.3d 1197, 1215 (10th Cir.2017)("Officer White . . . is the one who actually 'seized' Samuel Pauly by shooting him"). As to the first factor, Rollice may have committed a crime under Oklahoma law when he threatened law enforcement officers with the hammer, but that intertwines with the issue of officer conduct (to be discussed). Viewing the record in the light most favorable to the non-movant, the court finds the first and third factors favor plaintiff.

The second *Graham* factor, however, is "undoubtedly the 'most important' and fact-intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly*, 874 F.3d at 1215-1216. The use of deadly force is only justified if the officer had probable cause to believe that there was a threat of serious physical harm to himself or others. *Id.* at 1216. This factor itself is analyzed by means of a four-component test: (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect. *Id.* Even viewing the record in the light most favorable to plaintiff, the court finds all four components (and therefore the second *Graham* factor) strongly favor defendants.[7]

The court must also address additional theories raised by plaintiff. The Tenth Circuit

---

[7] "Ultimately, however, the totality-of-the-circumstances test is holistic and open-ended." *Crittenden,* 2019 WL 4238106, *4 (10th Cir.2019).

holds that the reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. *Pauly,* 874 F.3d at 1219.[8] Plaintiff argues that the officers' conduct toward Rollice "inflamed the tensions" and created the need to use such force. The court's review of the record finds no issue for a reasonable jury in this regard.

Plaintiff also points to the fact that Reed holstered his firearm and was prepared to use a Taser, while the two defendants did not. A similar argument was rejected in *Rucinski v. County of Oakland,* 2015 WL 3874482, *7 (E.D.Mich.2015), *aff'd,* 655 Fed.Appx. 338 (6th Cir.2016). *See Wilcoxson v. Painter,* 2016 WL 866327, *8 (E.D.N.C.2016)("Under the correct standard, defendant Painter's decision to use her gun instead of her Taser was well within the realm of an objectively reasonable response to a perceived threat of immediate harm"). *See also Plakas v. Drinski,* 19 F.3d 1143, 1148 (7th Cir.1994)(where an officer's use of deadly force is justified under the Constitution, there is no constitutional duty to use non-deadly force).[9]

---

[8]Defendants appear to argue that this principle no longer applies in light of *County of Los Angeles v. Mendez,* 137 S.Ct. 1539 (2017). The Tenth Circuit disagrees. *See Estate of Ceballos v. Husk,* 919 F.3d 1204 n.2 (10th Cir.2019).

[9]The Tenth Circuit has held that an officer who tases an arrestee uses excessive force when "a lesser degree of force would have exacted compliance and . . . this use of force was disproportionate to the need." *Booker,* 745 F.3d at 424. This was referring to a suspect already restrained, which was not the situation in the case at bar. The use of deadly force when the suspect poses an immediate threat is distinct. *See Jiron v. City of Lakewood,* 392 F.3d 410,414 (10th Cir.2004).

The court addresses another aspect. The Tenth Circuit does not appear to disapprove of taking a "segmented" view of such incidents (i.e., analyzing multiple shots separately if the circumstances so warrant.) *See Fancher v. Barrientos,* 723 F.3d 1191, 1199-1200 (10th Cir.2013). At the time of Girdner's final shot, Rollice was already wounded and in a kneeling position. While Rollice still held the hammer, his ability to inflict damage with it may (or may not) have been negligible. Still, this court must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard,* 572 U.S. 765, 775 (2014).[10] "What may later appear to be unnecessary when reviewed from the comfort of a judge's chambers may nonetheless be reasonable under the circumstances presented to the officer at the time." *Phillips v. James,* 422 F.3d 1075, 1080 (10th Cir.2005). In the end, "the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Estate of Larsen v. Murr,* 511 F.3d 1255, 1260 (10th Cir.2008). For the reasons stated, while this shooting was undeniably tragic, the court concludes plaintiff's burden of demonstrating that a reasonable jury could find facts supporting a violation of a constitutional right has not been met.

In the interest of thoroughness, the court will proceed to address the second prong of

---

[10]Fourth Amendment excessive force claims are judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. *Pauly,* 874 F.3d at 1215.

the test. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes,* 138 S.Ct. 1148, 1152 (2018). As stated, the incident under review took place in August, 2016. Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Grissom v. Roberts,* 902 F.3d 1162, 1168 (10th Cir.2018). Clearly established law should not be defined at a high level of generality. *See Milner v. Mares,* 754 Fed.Appx. 777, 779 (10th Cir.2019). Instead, the clearly established law must be "particularized" to the facts of the case. *Id.* Although there need not be a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. *Id.*[11]

Plaintiff cites as "strikingly similar to the case at bar" (#56 at 14) the Tenth Circuit decision in *Estate of Ceballos v. Husk,* 919 F.3d 1204 (10th Cir.2019). There, the deceased was in his driveway with a baseball bat, acting erratically. An officer shot Ceballos within one minute of arrival "after approaching Ceballos quickly and screaming at him to drop the bat, and refusing to give ground as Ceballos approached the officers. The officer was between 12 and 20 feet from Ceballos when he shot the bat-wielding man." *Gonzales v.*

---

[11]There can be the "rare obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Doe v. Woodard,* 912 F.3d 1278, 1289 (10th Cir.2019).

9

*Adson,* 2019 WL 1795937 n.7 (N.D.Okla.2019).

The Tenth Circuit, in denying qualified immunity, held that the clearly established right is that "an officer violates the Fourth Amendment when his or her reckless or deliberate conduct results in the need for lethal force or when the officers rely on lethal force unreasonably as a first resort in confronting an irrational suspect who is armed only with a weapon of short-range lethality and who has been confined on his own property." *Ceballos,* 919 F.3d at 1219.

This court has already rejected the argument that the officers' conduct in the case at bar created the need for lethal force. So far as the record reflects, the officers only began yelling at Rollice <u>after</u> Rollice picked up the hammer. To be sure, there is a rough equivalence between a hammer and a baseball bat, in that both are weapons of "short-range lethality." Nevertheless, the court does not find the plaintiff's "danger creation" theory (#56 at 12) applicable here.

The second portion of the statement in *Ceballos* (an officer using deadly force as a first resort when confronted with a baseball bat, or as here a hammer) might present a closer question but also implicates another fundamental issue. The *Ceballos* decision was issued on March 26, 2019, while the litigated events herein took place in August, 2016. The *Ceballos* decision itself notes that "our focus in deciding whether a constitutional right was clearly established is . . . at the time the challenged conduct occurred." *Id.* Therefore, *Ceballos* will not serve as "clearly established law" in the case at bar, <u>unless</u> the right existed in Tenth Circuit precedent preceding this incident.

The court in *Ceballos* found that there was a Tenth Circuit decision "closely analogous" for purposes of its analysis – *Allen v. Muskogee,* 119 F.3d 837 (10th Cir.1997). In *Allen*, the suspect sat in a car with a gun in his hand. The officers ran to the car yelling and tried to take the gun away from the suspect. In the struggle, the suspect pointed the gun at the officers, and the officers shot him. The Tenth Circuit held that a reasonable jury could have found a Fourth Amendment violation.

The argument (from plaintiff's perspective) would be that *Allen* was "existing precedent" in 2016 and the Tenth Circuit's interpretation of *Allen* rendered by the *Ceballos* court in 2019 makes manifest that this interpretation of *Allen* was "clearly established law" in August, 2016. In other words, this court could find the right recognized in *Ceballos* was present *in embryo* in *Allen*. The court is not persuaded this is correct. The right was not "clearly established" until the *Ceballos* decision. Moreover, this interpretation was not unanimous, even within *Ceballos*. Judge Bacharach dissented, and concluded: "Nor did *Allen* clearly establish a constitutional violation from Officer Husk's conduct." *Id.* at 1227. Judicial disagreement indicates the "clearly established law" hurdle has not been cleared. *See Van De Weghe v. Chambers,* 569 Fed.Appx. 617, 620 (10th Cir.2014). This court finds plaintiff has not met the second prong of the qualified immunity analysis either. Accordingly, summary judgment is appropriate.[12]

---

[12]Plaintiff also seeks to rely on an expert report (#56-8) of Dennis Waller, who opines that the officers ignored nationally accepted procedures of police training and practice, engaged in "reckless" conduct, and used excessive force. Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn

Engaging in a dispassionate discussion of a tragic death (particularly after viewing it on video) is an unavoidable task for a court. This court must follow the law as best it can, and the present regime of qualified immunity does not permit the case to proceed further.

It is the order of the court that the motion for summary judgment of defendants Vick and Girdner (#47) is hereby granted.

**IT IS SO ORDERED** this 25th day of SEPTEMBER, 2019.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

by applying the law to the facts. *United States v. Richter,* 796 F.3d 1173, 1195 (10th Cir.2015). The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern. *Id.* "[B]y permitting opinion testimony as to an ultimate issue, Rule 704(a) does not authorize opinions that merely tell the trier of fact what result to reach in the case." 29 Wright & Gold, *Federal Practice and Procedure,* §6284 at 468-69 (2016 ed.). This court concludes the expert report will not be considered. *See Lippe v. Howard,* 287 F.Supp.3d 1271, 1285 (W.D.Okla.2018); "It is well established that 'so long as a reasonable officer could have believed his conduct was justified, a plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's behavior leading up to the deadly confrontation was imprudent, inappropriate or even reckless.'" *Clark v. Colbert,* 2017 WL 3049523, *6 (E.D.Okla.2017), *aff'd,* 895 F.3d 1258 (10th Cir.2018)(quoting *City and County of San Francisco v. Sheehan,* 135 S.Ct. 1765, 1777 (2015)). Even if the report were to be considered, it is only pertinent to the first prong of the qualified immunity test, not the "clearly established" prong.